FILED
TARRANT COUNTY
8/10/2017 5:08 PM
THOMAS A. WILDER
DISTRICT CLERK

CAUSE NO. 067-293808-17 _____

| | | |
|---|---|---|
| **ROCKETSLED MERCHANDISE** | § | IN THE DISTRICT COURT |
| Plaintiff | § § § | |
| v. | § § | ____ JUDICIAL DISTRICT |
| **UNITED STATES LIABILITY INSURANCE COMPANY** | § § § § | |
| Defendant | § | TARRANT COUNTY, TEXAS |

### PLAINTIFF'S ORIGINAL PETITION AND REQUESTS FOR DISCLOSURE

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiff, Rocketsled Merchandise (hereafter "Rocketsled"), files this original petition complaining of Defendant, United States Liability Insurance Company), in which Plaintiff is seeking monetary relief over $200,000. In support of this petition, Plaintiff would show this honorable court as follows:

#### I. Parties, Venue and Discovery Level

Plaintiff, Rocketsled, is a Texas company that is the insured under an insurance policy with Defendant and owns the storm damaged property located at 2101 East Richmond, Fort Worth, Texas, which damage is the subject of this lawsuit.

Defendant, United States Liability Insurance Company (hereafter "USLIC"), is a foreign insurance company doing business in Texas that can be served by serving its registered agent, Lisa Mann at Bingham Mann & House, 4500 Yoakum Blvd., Houston, Texas 77006.

The venue of this case is proper in Tarrant County, Texas under Sections 15.002 and 15.032 of the Texas Civil Practices and Remedies Code and Section 17.56 of the Deceptive Trade Practices-Consumer Protection Act (hereafter the "DTPA").

Plaintiff intends to conduct discovery under Level 3 discovery pursuant to Rule 190.4 of the Texas Rules of Civil Procedure.

EXHIBIT 2A

## II. Agency and Respondeat Superior

Whenever in this petition it is alleged that the Defendant did any act or thing, it is meant that Defendant or its agents, officers, servants, employees, or representatives did such act or thing. They were also done with the full authorization or ratification of Defendant or done in the normal routine, course, and scope of the agency or employment of Defendant or its agents, officers, servants, employees, or representatives.

## III. Conditions Precedent

All conditions precedent to recovery have occurred or been performed.

## IV. Facts of the Case

Rocketsled purchased property insurance from USLIC (Policy Number BP 1580035) to cover property losses to Rocketsled's property at 2101 East Richmond, Fort Worth, Texas 78104. On or about March 17, 2016, a hail and windstorm caused substantial damage to the Rocketsled property. Rocketsled reported this loss to USLIC and its agents, who assigned this loss the claim number of K098343.

USLIC hired adjusters, Bill Rohrman of United States Liability Insurance Group and Joe Henson of NCA Group, Inc., to investigate the loss and adjust this claim. Rocketsled believes that USLIC hired these adjusters because USLIC knows they are biased for insurance companies and will give the insurer favorable, result-oriented investigations, reports, and estimates on which the insurer can either deny or low-ball an insured's claim. For this loss, Rocketsled hired a Texas licensed public insurance adjuster and loss consultant, Brian Revere, to assist Rocketsled with its insurance claim.

Thereafter, USLIC and its adjusters, hired an engineer, Robert N. Fleishmann of Haag Engineering (hereinafter "Haag"), to investigate and report on the windstorm and hail damage to the Rocketsled property. Rocketsled also believes that USLIC and Mr. Henson hired Mr. Fleishmann and Haag because they know that they are biased for insurance companies and

EXHIBIT 2A

will give them favorable, result-oriented reports on which they can either deny or low-ball claims for damage from windstorm and hail to an insured's property.

On April 1, 2016, Joe Henson from NCA Group inspected the loss with Larry Sanford (Rocketsled's consultant and estimator) and engineer Robert Fleishmann. True to form, in an April 20, 2016 report, Mr. Fleishmann and Haag concluded that: (1) the hail fall at the building was of sufficient size to dent the metal roof panels and scuff off the oxidized surface coating of the roof, but the coating itself had not been diminished by hail impacts, nor had the service life of the roof been diminished; (2) the hail was too small to damage the plastic skylights and metal roof panels; (3) hail impacts caused some of the insulation on the underside of the metal roof panels to detach from metal panels; (4) there was no wind damage to the building roof, but that damage was due to improper installation; and (5) the leakage was attributed to openings in the roof from improper sealing, not the storm damage. In this respect, Mr. Fleishmann did not properly inspect nor report on the subject roofs and again made biased, result-oriented conclusions to assist US and its adjusters in low-balling an insured's claim.

As an experienced adjuster, Mr. Henson either knew or should have known that Mr. Fleishmann and Haag had prepared a result-oriented report that misidentified the cause of damage at Rocketsled's building to assist USLIC in either denying or low-balling the claim. Nevertheless, based on this biased and unsubstantiated report, Mr. Henson prepared an estimate for all the damage to the roofs identified by Mr. Fleishmann and Haag at an actual cash value of $16,836.14. By this conduct, USLIC, Mr. Rohrman, and Mr. Henson refused to properly pay a claim without conducting a reasonable investigation of that claim in violation of Section 541.060 of the Texas Insurance Code. They also violated Section 541.060 by failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim on which their liability had become reasonably clear.

Rocketsled also hired a consultant, Larry Sanford of JL Consultants, to properly estimate the storm damage at Rocketsled's building from the subject storm. Mr. Sanford estimated that

EXHIBIT 2A

the cost to properly repair the windstorm damage to the roofs of Rocketsled's building at $182,852.10. This estimate included all areas of roof damage, code compliance charges and overhead and profit charges. It is based on giving Rocketsled like kind and quality for the damage to the property from the subject wind and hail storm.

In a May 20, 2016 letter, USLIC issued payment in the amount of $14,336.14 that USLIC determined to be the actual cash value (ACV) of damage to insulation knocked loose by vibrations from the hail striking the roof less the applicable deductible. According to USILC's investigation, there was no wind damage to the roof and the interior water leakage was due to openings caused by improper sealing of roof appurtenances and improper installation of the skylights and not from any storm damage. Obviously, Rocketsled and its consultants were not in agreement with these conclusions and low-ball payment. They also feel that USLIC, NCA Group, their adjusters, and engineers performed in inadequate and biased investigation as a way to low-ball Plaintiffs' insurance claim. In this respect, Plaintiff's representative was at the building during the storm and saw water leaking into the building from storm created openings and insulation falling as a result of the subject hail and windstorm, which information Defendant, its adjusters, and consultants ignored.

In a continuing effort to properly investigate the loss, Plaintiff retained Chris Lackey, a roofing consultant, to inspect the storm damage to Rocketsled's building. In his July 31, 2017 report, Mr. Lackey determined that the subject storm caused the leaks in Rocketsled's metal roof by the storm winds displacing the roofing panels and the hail impacts damaging the roofing panels and lap seams, which also allowed water penetration into the building. Mr. Lackey also determined that the damage to the roof from the subject storm was beyond cosmetic and concluded:

- The loss of insulation on the underside of the metal roof panels is attributable to large hailstone impacts;

EXHIBIT 2A

- Recent hail fall at the building was of sufficient size to cause functional damage by denting both the metal wall and roof panels, effecting the water shedding capability of the roof panels, and compromised the overall integrity of the roof;

- Hail impacts additionally caused some of the insulation on the underside of the metal roof panels to detach from the metal panels due to vibration and water intrusion;

- Leakage can be attributed to openings in the roof and impacts to lap seams, causing damage to the seam seal tape between the panels.

To date, however, USLIC and its adjusters have failed to pay Rocketsled for the proper repair of the wind and hail storm damage to its property.

### V. Cause of Action for Breach of Contract

According to the insurance policy that Plaintiff purchased, Defendant has the duty to investigate and pay Plaintiff policy benefits for claims made for damages to Plaintiff's buildings caused by hail or windstorm. The subject hail and windstorm caused substantial damage to Plaintiff's building that is covered under Plaintiff's insurance policy with Defendant. Defendant has breached its contractual obligations and the subject insurance policy by failing to pay Plaintiff policy benefits for the cost to properly repair the wind and hail storm damage to Plaintiff's building. Defendant has also breached the contractual provisions on timely investigating, adjusting, and paying Plaintiff's insurance claim. As a result of these breaches of contract, Plaintiff has suffered the damages that are described in this petition.

### VI. Causes of Action for Violation of Chapter 542 of the Insurance Code

Defendant's conduct that is described herein violates Chapter 542 of the Texas Insurance Code. Within 15 days after the receipt of either actual or written notice of Plaintiff's wind and hail storm claim, Defendant did not request from Plaintiff any items, statements, and forms that it reasonably believed at that time would be required from Plaintiff for its claim. As a result, Defendant has violated Chapter 542 by failing to accept or reject Plaintiff's claim in writing within 36 days after receiving either actual or written notice of its claim. Defendant has also violated Section 542.058 by failing to pay Plaintiff's claim within 75 days after it received either actual or written notice of the claim or within 60 days after any other applicable statutory

EXHIBIT 2A

period. In the event it is determined that Defendant owes Plaintiff any additional monies, then Defendant has automatically violated Chapter 542 of the Texas Insurance Code.

### VII. DTPA Causes of Action

Plaintiff incorporates all the allegations in this petition for these causes of action against Defendant under the provisions of the DTPA. Plaintiff has met all conditions precedent to bringing these causes of action against this Defendant. Specifically, Defendant's violations of the DTPA include, without limitation, the following matters:

A. By its acts, omissions, failures, and conduct that are described in this petition, Defendant has violated Sections 17.46(b)(5),(7),(12) and (20) of the DTPA. In this respect, Defendant's violations include, without limitation: (1) its failure to properly and reasonably investigate Plaintiff's claim; (2) its hiring of a biased adjusters and consultants to obtain an inadequate, unreasonable, and result-oriented reports and estimates to assist Defendant in low-balling Plaintiff's storm damage insurance claim; and (3) its failure to timely pay for the proper repair of Plaintiff's property on which Defendant's liability had become reasonably clear;

B. As described in this petition, Defendant represented to Plaintiff that the subject insurance policy and Defendant's adjusting and investigative services had characteristics or benefits that they did not have, which gives Plaintiff the right to recover under Section 17.46(b)(5) of the DTPA;

C. As described in this petition, Defendant represented to Plaintiff that the subject insurance policy and Defendant's adjusting and investigative services were of a particular standard, quality, or grade when they were of another in violation of Section 17.46(b)(7) of the DTPA;

D. As described in this petition, Defendant represented to Plaintiff that the subject insurance policy and Defendant's adjusting and investigative services conferred or involved rights, remedies, or obligations that they did not have, which gives Plaintiff the right to recover under Section 17.46(b)(12) if the DTPA;

E. By representing that Defendant would pay to repair the damages caused by windstorm and then not doing so, Defendant has violated Sections 17.46(b)(5), (7) and (12) of the DTPA;

F. Defendant has breached an express warranty that the damage caused by hail or windstorm would be covered under the subject insurance policy. This breach entitles Plaintiff to recover under Sections 17.46(b)(12) and (20) and 17.50(a)(2) of the DTPA;

G. Defendant's actions and conduct, as described in this petition, are unconscionable in that they took advantage of Plaintiff's lack of knowledge, ability, and experience to a grossly unfair degree. Defendant's unconscionable conduct gives Plaintiff the right to relief under Section 17.50(a)(3) of the DTPA; and

EXHIBIT 2A

H.  Defendant's conduct, acts, omissions, and failures, as described in this petition, are unfair practices in the business of insurance in violation of Section 17.50(a)(4) of the DTPA.

All of the above-described acts, omissions, and failures of Defendant are a producing cause of Plaintiff's damages that are described in this petition.

### VIII. Causes of Action for Unfair Insurance Practices

Plaintiff incorporates all the allegations in this petition for these causes of action against Defendant under the Texas Insurance Code. Plaintiff has satisfied all conditions precedent to bringing these causes of action. By its acts, omissions, failures, and conduct, Defendant has engaged in unfair and deceptive acts or practices in the business of insurance in violation of Chapter 541 of the Texas Insurance Code. Such violations include, without limitation, all the conduct described in this petition plus Defendant's failures to properly and reasonably investigate Plaintiff's storm damage insurance claim. They also include Defendant's failure to pay for the proper repair of Plaintiff's building on which its liability had become reasonably clear. They further include Defendant's hiring of a biased adjusters and consultants to obtain an unreasonable and result-oriented investigation and report to assist them in low-balling the payment of Plaintiff's insurance claim and their failure to look for coverage and give Plaintiff the benefit of the doubt. Specifically, Defendant is guilty of the following unfair insurance practices:

A.  Engaging in false, misleading, and deceptive acts or practices in the business of insurance in this case;

B.  Engaging in unfair claims settlement practices;

C.  Misrepresenting to Plaintiff pertinent facts or policy provisions relating to the coverage at issue;

D.  Not attempting in good faith to effectuate a prompt, fair, and equitable settlement of Plaintiff's claim on which Defendant's liability has become reasonably clear;

E.  Failing to affirm or deny coverage of Plaintiff's claim within a reasonable time;

F.  Refusing to pay Plaintiff's claim without conducting a reasonable investigation with respect to the claim; and

**EXHIBIT 2A**

G. Failing to provide promptly to a policyholder a reasonable explanation of the basis in the insurance policy, in relation to the facts or applicable law, for the denial of a claim or for the offer of a compromise settlement.

Defendant has also breached the Texas Insurance Code when it breached its duty of good faith and fair dealing. Defendant's conduct as described herein has resulted in Plaintiff's damages that are described in this petition.

### IX. Cause of Action for Breach of Duty of Good Faith and Fair Dealing

Plaintiff incorporates all the allegations of the preceding paragraphs for this cause of action against Defendant. By its acts, omissions, failures and conduct, Defendant has breached its common law duty of good faith and fair dealing by denying Plaintiff's entire storm damage claim and by failing to conduct a reasonable investigation to determine whether there was a reasonable basis for this denial. Defendant has also breached this duty by unreasonably delaying payment of Plaintiff's entire claim and by failing to settle Plaintiff's entire claim because Defendant knew or should have known that it was reasonably clear that the entire claim was covered. This conduct of Defendant is a proximate cause of Plaintiff's damages.

### X. Waiver and Estoppel

Defendant has waived and is estopped from asserting any defenses, conditions, exclusions, or exceptions to coverage not contained in any reservation of rights or denial letters to Plaintiff.

### XI. Damages

The above described conduct of Defendant has caused Plaintiff damages, which include, without limitation, the cost to properly repair its property in the amount of approximately $182,852.10 and any investigative fees incurred during the claim process. Plaintiff is also entitled to recover the amount of its claim plus an eighteen percent per annum interest on that amount against Defendant as damages under Section 542.060 of the Texas Insurance Code. All the damages described in this petition are within the jurisdictional limits of the Court.

### XII. Additional Damages

EXHIBIT 2A

Defendant has also "knowingly" and "intentionally" committed deceptive trade and unfair insurance practices as those terms are defined in the applicable statutes. Because of Defendant's knowing and intentional misconduct, Plaintiff is entitled to additional damages under Section 17.50(b)(1) of the DTPA and by Chapter 541 of the Texas Insurance Code.

### XIII. Exemplary Damages

Defendant's breach of its duty of good faith and fair dealing was done intentionally and with "malice" and "gross negligence" as those terms are defined in Chapter 41 of the Texas Civil Practice and Remedies Code. These violations by Defendant are the type of conduct that the State of Texas protects its citizens against by the imposition of exemplary damages. Therefore, Plaintiff seeks the recovery of exemplary damages in an amount to be determined by the finder of fact that is sufficient to punish Defendant for its wrongful conduct and to set an example to deter Defendant and others similarly situated from committing similar acts in the future.

### XIV. Attorney's Fees

As a result of Defendant's conduct that is described in this petition, Plaintiff has been forced to retain the undersigned attorney to prosecute this action and has agreed to pay reasonable attorney's fees. Plaintiff is entitled to recover these attorney's fees under Chapter 38 of the Texas Civil Practices and Remedies Code; Chapters 541 and 542 of the Texas Insurance Code; and Section 17.50 of the DTPA.

### XV. Rule 194 Requests for Disclosure

Pursuant to Rule 194 of the Texas Rules of Civil Procedure, Defendant is requested to disclose, within 50 days of service of this request, the information or material described in Rule 194.2(a) through (l).

WHEREFORE, PREMISES CONSIDERED, Plaintiff demands a *trial by jury* and also requests that Defendant be cited to appear and answer, and on final hearing, the court award Plaintiff a judgment against Defendant for the following:

1. Actual, economic, additional, and exemplary damages in an amount within the

EXHIBIT 2A

jurisdictional limits of the court;

2. Reasonable attorney's fees through trial and on appeal;

3. Pre-judgment and post-judgment interest as provided by law;

4. Costs of court; and

5. Such other and further relief to which Plaintiff may be justly entitled.

Respectfully submitted,

*Loree & Lipscomb*
The Terrace at Concord Park
777 E. Sonterra Blvd, Suite 320
San Antonio, Texas 78258
Telephone: (210) 404-1320
Facsimile:  (210) 404-1310

By: _____
Robert W. Loree
State Bar No. 12579200
rob@lhllawfirm.com
Todd Lipscomb
State Bar No. 00789836
todd@lhllawfirm.com

Attorneys for Plaintiff

EXHIBIT 2A